IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MAURICE GLENN                      :

                                   :

        v.                         :    Civil Action No. DKC 15-3058

                                   :

WELLS FARGO BANK, N.A.             :

                                   :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this discriminatory lending case are a motion to dismiss the complaint (ECF No. 11) and a motion to strike (ECF No. 19) filed by Defendant Wells Fargo Bank, N.A. ("Defendant" or "Wells Fargo"). The issues have been fully briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, both motions will be granted, and Plaintiff will have 21 days within which to file an amended complaint.

**I.  Background**

   **A.  Factual Background[1]**

Plaintiff Maurice Glenn ("Plaintiff"), who is African American, banked with Wachovia Bank, N.A. ("Wachovia") before it

---

[1] When considering a motion to dismiss for failure to state a claim, the well-pleaded allegations in the complaint are accepted as true. *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). Unless otherwise noted, the facts outlined here are alleged in the complaint and construed in the light most favorable to Plaintiff, the nonmoving party.

merged with Defendant in December 2008.  Plaintiff maintained a business line of credit with Wachovia, which he contends was "improperly and unilaterally designated by [Defendant] as a Business Direct Account." (ECF No. 1, at 3 ¶ 15).[2]  The Wachovia business line of credit had a 3.25% interest rate, but Defendant allegedly charged Plaintiff an increased interest rate of 7.25% without notifying him and "in stark violation of his original contract." (*Id.* at 4 ¶ 17).[3]

Plaintiff asserts that between 2013 and 2014, Defendant denied multiple lending applications he submitted based solely on his race and despite his qualifications.  In or around January 2013, Plaintiff applied for a loan consolidation for his business line of credit and two home equity loans.  Defendant initially approved the consolidation, but it was ultimately rejected.  Bob Davis, a bank representative, allegedly told Plaintiff "that he qualified for a loan consolidation but did not help him fill out the application." (*Id.* at 6 ¶ 4).  Plaintiff then telephoned Geetesh Kapoor, another Wells Fargo representative, regarding his application for a consolidated loan.  The complaint recites:

---

[2]  The paragraphs in the complaint are numbered inconsistently.  For ease of reference, the court will use citations containing the page and paragraph numbers.

[3]  Plaintiff does not attach the relevant banking documentation or make any factual allegations in the complaint regarding contractual terms and obligations.

> Mr. Kapoor provided to [Plaintiff] a
> document that stated [Defendant] would pay
> for all liens on his house.[4]   During the
> discussion Mr. Kapoor talked to another
> Wells Fargo employee about [Plaintiff's]
> application.   Mr. Kapoor then stated to
> [Plaintiff] that, "I hope you don't mind but
> may I ask what your race is?"   [Plaintiff]
> responded that he is African American.

(*Id.* at 6 ¶¶ 7-8).[5]   Thereafter, Mr. Kapoor "informed [Plaintiff]

that he did not qualify for the consolidated loan.   Mr. Kapoor

changed from being pleasant to totally nonresponsive,

---

[4] Plaintiff does not identify what type of document he references, what specifically the document stated, or how Mr. Kapoor "provided" a document over the phone.

[5] Defendant notes that the implementing regulations of the federal Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, mandate that lenders request the race and ethnicity of applicants for credit secured by an applicant's dwelling.   (ECF No. 11-2, at 9-10 (citing 12 C.F.R. § 202.13(a)(1))).   Under the ECOA's implementing regulations:

> A creditor that receives an application for
> credit primarily for the purchase or
> refinancing of a dwelling occupied or to be
> occupied by the applicant as a principal
> residence, where the extension of credit
> will be secured by the dwelling, shall
> request as part of the application the
> following information regarding the
> applicant(s):
>
> (i) Ethnicity . . . ; and race . . . .

12 C.F.R. § 202.13(a)(1).   Although § 202.5(b) provides that "[a] creditor shall not inquire about the race . . . of an applicant . . . in connection with a credit transaction," an explicit carve-out exists for information required by § 202.13. *Id.* § 202.5(a)(2) ("Notwithstanding paragraphs (b) through (d) of this section, a creditor shall request information for monitoring purposes as required by § 202.13 for credit secured by the applicant's dwelling.").

uncooperative, and disinterested in further helping [Plaintiff]" after learning Plaintiff's race. (*Id.* at 6 ¶ 9). Plaintiff asserts that another Wells Fargo employee, Mr. Knapp, also initially told Plaintiff that he qualified for the loan consolidation but subsequently denied Plaintiff's application upon learning his race. (*Id.* at 6-7 ¶¶ 10-11).

In or around May 2013, Plaintiff allegedly accepted an offer from two Wells Fargo representatives to convert his Wachovia business line of credit into a Wells Fargo business line of credit. Plaintiff also was told that he qualified for a new home equity loan. (*Id.* at 7 ¶¶ 12-13). However, the representatives "took Plaintiff's applications and stopped communicating" with him upon learning his race. (*Id.* at 7 ¶¶ 14-15). Plaintiff further alleges that Defendant denied his applications for credit or to refinance his mortgage loan without reasonable basis and with discriminatory intentions. (*Id.* at 8-9 ¶¶ 22-30). Plaintiff contends that Defendant engaged in the practice of redlining and "selectively raised the threshold requirement for the value of [his] home in order to deny him credit on the basis of his race." (*Id.* at 10 ¶ 33).

In December 2013, Defendant allegedly denied Plaintiff's application for a modified interest rate for his home equity loans under the Home Affordable Modification Program ("HAMP") on the basis of race. According to Plaintiff, he called the HAMP

4

telephone hotline in July 2015 and was told that he qualified for a loan modification through the federal program. (*Id.* at 4-5 ¶¶ 19-23). As a result, Plaintiff lodged a complaint with the Office of the Comptroller of the Currency ("OCC") regarding Defendant's denial of his 2013 HAMP application, which he believed was motivated by racial discrimination. The OCC then notified the U.S. Department of Housing and Urban Development ("HUD"). As a result of his complaints to the federal agencies, Defendant allegedly retaliated against Plaintiff by denying his subsequent credit and loan modification applications. (*Id.* at 5 ¶¶ 24-26).[6]

Plaintiff asserts that he also contacted other agencies and government officials to report Defendant's conduct. In or around May 2013, Plaintiff filed a complaint with the office of United States Senator Benjamin Cardin, which then contacted Defendant. Plaintiff does not disclose the resolution of that complaint, but he alleges that Defendant repeatedly denied subsequent loan applications "on the basis of his race . . . and in retaliation [for] his opposition to [Defendant's] discrimination." (*Id.* at 7 ¶ 18). Plaintiff also contacted the Consumer Financial Protection Bureau, the office of United States Senator Barbara Mikulski, and the Executive Office of the

---

[6] The complaint, however, does not reference any specific applications that Defendant denied after July 2015, nor does Plaintiff discuss the resolution of the HUD complaint.

President of the United States.  The complaint does not specify when these complaints were lodged.  Plaintiff alleges that Defendant continued to deny his loan and credit applications in retaliation for Plaintiff's complaints.  (*See id.* at 8 ¶¶ 19-21, at 9 ¶ 27).

### B.   Procedural History

Plaintiff initiated this action against Defendant on October 10, 2015, alleging violations of the ECOA (Count I); the Maryland Equal Credit Opportunity Act ("MECOA"), Md. Code Ann., Com. Law § 12-701 *et seq.* (Count II); the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.* (Count III); Title VI of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d *et seq.* (Counts IV and V); and the Maryland Consumer Protection Act ("MCPA"), Md. Code Ann., Com. Law § 13-301 *et seq.* (Count VI). Count VII asserts a claim that Defendant breached Plaintiff's contract with Wachovia.  Accordingly, the allegations concern race discrimination under the ECOA, MECOA, FHA, and Title VI; retaliation under Title VI; deceptive practices under the MCPA; and breach of contract under Maryland common law.

Defendant moved to dismiss the complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6).  (ECF No. 11). Plaintiff responded in opposition and submitted a supplemental exhibit containing documents that Defendant sent to Plaintiff concerning his accounts.  (ECF Nos. 12; 15).  Defendant replied.

(ECF No. 17).   More than one month after filing his response,
Plaintiff submitted the "Declaration of Maurice Glenn" (ECF No.
18), which "was filed as a supplement to [his] response to
[Defendant's] [m]otion to dismiss."   (ECF No. 20, at 1).
Defendant moved to strike the declaration as an improper
surreply.   (ECF No. 19).   Plaintiff opposed Defendant's motion
(ECF No. 20), and Defendant replied (ECF No. 21).

## II.  Defendant's Motion to Strike

Plaintiff contends that the "Declaration of Maurice Glenn"
is a supplemental exhibit to his opposition brief filed more
than one month prior.   The declaration purports to add factual
allegations not included in the complaint, and constitutes a
surreply.   *See Butler v. DirectSAT USA, LLC*, 47 F.Supp.3d 300,
312 n.5 (D.Md. 2014).   Plaintiff's surreply does not comport
with the requirements of Local Rule 105.2(a) and will be
stricken.

Although district courts have discretion to accept them,
surreply briefs are generally disfavored.   *See Chubb & Son v.
C.C. Complete Servs., LLC*, 919 F.Supp.2d 666, 679 (D.Md. 2013).
Local Rule 105.2(a) provides that "[u]nless otherwise ordered by
the court, surreply memoranda are not permitted to be filed."
Courts may allow a surreply when "the moving party would be
unable to contest matters presented to the court for the first
time in the opposing party's reply."   *Khoury v. Meserve*, 268

F.Supp.2d 600, 605 (D.Md. 2003), *aff'd*, 85 F.App'x 960 (4th Cir. 2004).   Here, Plaintiff failed to request leave to file a surreply, and he concedes that "there were no new legal issues [raised in Defendant's reply brief] which would require that Plaintiff move the [c]ourt to file his own surreply.   The factual material contained in Plaintiff's declaration was contained in his response to [Defendant's] motion to dismiss." (ECF No. 20, at 4).   By Plaintiff's own admission, his declaration is not responsive to Defendant's reply brief.   The present circumstances do not warrant leave to file a surreply.

Moreover, Plaintiff's assertion that the declaration merely builds on factual allegations raised in his opposition is unavailing, as allegations raised for the first time in response to a motion to dismiss are not properly considered by the court. *See Myers v. Montgomery Cnty.*, No. DKC-14-3054, 2015 WL 3795915, at *9 n.7 (D.Md. June 17, 2015) ("Plaintiff attaches as an exhibit to his opposition an affidavit . . . , but it cannot be considered on a motion to dismiss."); (ECF No. 18 ¶¶ 3, 5, 7-10, 12-15, 18).   Accordingly, Plaintiff's attempt to amend the complaint by filing a declaration would be inappropriate even if he had attached the declaration to his opposition brief.   *See Mylan Labs., Inc. v. Akzo, N.V.*, 770 F.Supp. 1053, 1068 (D.Md. 1991) ("[I]t is axiomatic that the complaint may not be amended

by the briefs in opposition to a motion to dismiss." (citation and internal quotation marks omitted)).

## III. Defendant's Motion to Dismiss

### A. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville,* 464 F.3d 480, 483 (4th Cir. 2006).  A complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).

At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff.  *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs.*, 7 F.3d at 1134).  In evaluating the complaint, the court need not accept unsupported legal

allegations.  *Revene v. Charles Cnty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations without any reference to actual events.  *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009).

Allegations of fraud, which Plaintiff appears to assert in Count VI, are subject to the heightened pleading standard of Fed.R.Civ.P. 9(b).  *Harrison*, 176 F.3d at 783.  Rule 9(b) states that, "in alleging a fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Such circumstances typically "include the 'time, place, and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'"  *Id.* at 784 (quoting 5 Charles Alan Wright & Arthur R. Miller, Fed. Prac. & Proc. § 1297 (2d ed. 1990)).  Rule 9(b) provides the defendant with sufficient notice of the basis for the plaintiff's claim, protects the defendant against frivolous suits, eliminates fraud actions where all of the facts are learned only after discovery, and safeguards the defendant's reputation.  *Id.* at 784 (citation omitted).  Fraud allegations that fail to comply with Rule 9(b)

warrant dismissal under Rule 12(b)(6).  *See Harrison*, 176 F.3d at 783 n.5.

**B. Analysis**

**1. Race Discrimination**

**a.  Violations of the ECOA and the MECOA (Counts I and II)**

The ECOA "contain[s] broad anti-discrimination provisions that 'make it unlawful for any creditor to discriminate against any applicant with respect to any credit transaction on the basis of race, color, religion, national origin, sex or marital status, or age.'"  *Capitol Indem. Corp. v. Aulakh*, 313 F.3d 200, 202 (4th Cir. 2002) (quoting 15 U.S.C. § 1691(a)(1)).  To succeed on an ECOA claim at trial, a plaintiff must provide direct evidence of unlawful discrimination or, if direct evidence is lacking, follow the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Boardley v. Household Fin. Corp. III*, 39 F.Supp.3d 689, 709-10 (D.Md. 2014); *Faulkner v. Glickman*, 172 F.Supp.2d 732, 737 (D.Md. 2001).  At the motion to dismiss stage, however, a complaint need not establish a *prima facie* case of discrimination under the *McDonnell Douglas* framework.  *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002) (noting that "[t]he *prima facie* case . . . is an evidentiary standard, not a pleading requirement").  Rather, "to survive a motion to dismiss, the complaint must 'state[] a plausible claim for

relief' that 'permit[s] the court to infer more than the mere possibility of misconduct" based upon "its judicial experience and common sense.'"  *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679), *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 132 S.Ct. 1327 (2012).

Here, contrary to Defendant's argument, Plaintiff is not required at the motion to dismiss stage to provide any evidence sufficient to sustain a claim for discriminatory lending. (*See* ECF No. 11-2, at 8).   Nonetheless, the allegations in Plaintiff's complaint do not state a plausible claim for relief. The elements of a *prima facie* ECOA lending discrimination case are that: (1) Plaintiff is a member of a protected class; (2) he was qualified for the benefit he sought; and (3) despite those qualifications, he was rejected.  *Boardley*, 39 F.Supp.3d at 710-11 (citing *Letke v. Wells Fargo Home Mortg., Inc.*, No. RDB-12-3799, 2013 WL 6207836, at *4 (D.Md. Nov. 27, 2013)).[7]  Defendant

---

[7] As Judge Grimm noted in *Boardley*, "[t]he elements for a *prima facie* case of ECOA lending discrimination are less well-settled."  39 F.Supp.3d at 710.  The Fourth Circuit has, at times, added an element to the *prima facie* case requiring the plaintiff to show that the defendant continued to extend credit to others of similar credit stature outside of the plaintiff's protected class.  *See Wise v. Vilsack*, 496 F.App'x. 283, 285 (4th Cir. 2012).  In *Boardley*, Judge Grimm addressed the lingering question regarding the elements necessary to establish a *prima facie* case of ECOA lending discrimination.  39 F.Supp.3d at 711. There, the court focused on the three elements previously identified, eliminating the fourth element from consideration.

contends that Plaintiff failed to allege plausibly that he qualified for the benefits he sought. Throughout the complaint, Plaintiff simply asserts that he was qualified for the credit extensions and loan modifications. (ECF No. 1, at 10 ¶ 34, 12 ¶ 48, 13 ¶ 60). On multiple occasions, Defendant's representatives allegedly "approved" Plaintiff for extensions of credit or informed him that he was qualified and should submit loan applications. (*Id.* at 5 ¶ 23, 5 ¶ 3, 6 ¶ 4, 6 ¶ 6, 6 ¶ 10, 7 ¶¶ 12-13). However, Plaintiff offers no allegations regarding the terms of his credit approval, the requirements necessary for approval, or, critically, Plaintiff's actual qualifications when he submitted each application. *See Boardley*, 39 F.Supp.3d at 711 ("[B]ecause . . . Plaintiffs do not allege their qualifications, Plaintiffs' pleadings fall short with regard to their ECOA lending discrimination claim."); *Combs v. Bank of Am., N.A.*, No. GJH-14-3372, 2015 WL 5008754, at *3 (D.Md. Aug. 20, 2015) ("Although she alleges that she is a member of a protected class, she fails to adequately allege that she met the qualifications for loan modification and was denied despite her qualifications. In fact, Plaintiff does not indicate what

---

Judge Grimm noted that, in the credit lending context, comparative evidence of lending decisions is not readily available or easily accessible to most plaintiffs. *Id.* (citing *Best Med. Int'l, Inc. v. Wells Fargo Bank, N.A.*, 937 F.Supp.2d 685, 697 (E.D.Va. 2013)). Here, both parties refer to the three-element *prima facie* case, and the court will analyze Plaintiff's claim accordingly.

qualifications were at issue."). Plaintiff's "[t]hreadbare recitals of the elements of [the] cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79. Accordingly, Plaintiff has failed to state an ECOA claim for discriminatory lending.

Defendant challenges Plaintiff's MECOA claim on the same grounds. "The MECOA is modeled after the federal ECOA." *Combs*, 2015 WL 5008754, at *3 (citing *Patton v. Wells Fargo Fin. Md., Inc.*, 437 Md. 83, 99-100 (2014)). Under the statute, "[a] creditor that complies with the applicable provisions of the [ECOA] . . . is in compliance with the requirements of this subtitle; and . . . [a]ny violation of the [ECOA] . . . is a violation of the provisions of this subtitle." Md. Code Ann., Com. Law § 12-704(2)-(3). Because Plaintiff's ECOA claim cannot withstand Rule 12(b)(6) scrutiny, neither can his MECOA claim.[8]

---

[8] Defendant further argues that Plaintiff's MECOA claim is time-barred. (ECF No. 11-2, at 12-13). The statute provides that litigants must bring actions "within one year from the date of the occurrence of the violation." Md. Code Ann., Com. Law § 12-707(g). At the motion to dismiss stage, however, Defendant's statute of limitations challenge is an affirmative defense that will prevail only if it is apparent from the face of the pleadings that the limitations period has expired. *Blackstone v. St. Mary's County Sheriff's Office*, No. DKC-13-3809, 2014 WL 3891688, *3 (D.Md. Aug. 6, 2014); *see Dean v. Pilgrim's Pride Corp.*, 395 F.3d 471, 474 (4th Cir. 2005). Here, the relevant dates and timeframes regarding Plaintiff's claim are far from clear.
Defendant contends that Plaintiff's FHA, MCPA, and breach of contract claims are also time-barred. (ECF No. 11-2, at 13, 14-15). Similarly, given the lack of clarity in the complaint

### b.   Violations of the FHA (Count III)

The FHA provides private citizens a right of action against those who discriminate against them in the housing market. Specifically, "[i]t shall be unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race [or] color." 42 U.S.C. § 3605(a). The act defines a residential real estate-related transaction as: "[t]he making or purchasing of loans or providing other financial assistance (A) for purchasing, constructing, improving, repairing, or maintaining a dwellings; or (B) secured by residential real estate." *Id.* § 3605(b)(1). To state a claim, Plaintiff must allege that he suffered discrimination within the meaning of the FHA through discriminatory intent or discriminatory impact. *Robinson v. Bd. of Cnty. Comm'rs for Queen Anne's Cnty., MD*, No. RDB-07-1903, 2008 WL 2484936, at *9 (D.Md. June 19, 2008) (citing *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 986 (4th Cir. 1984)).

The complaint fails to allege an FHA violation through discriminatory intent.

---

concerning relevant dates, the pleading does not contain allegations sufficient to establish that Plaintiff's claims are time-barred.

> To successfully allege discrimination in
> connection with a loan application, a
> complaint must state that "(1) the plaintiff
> is a member of a protected class, (2) the
> plaintiff applied for and was qualified for
> a loan, (3) the loan was rejected despite
> the plaintiff's qualifications, and (4) the
> defendants continued to approve loans for
> applicants with qualifications similar to
> those of the plaintiff." *Frison v. Ryan
> Homes*, No. AW-04-350, 2004 WL 3327904, at *5
> (D.Md. Oct. 29, 2004).

*Watson v. Bank of Am., N.A.*, No. PJM-14-1335, 2015 WL 1517405, at *5 (D.Md. Mar. 30, 2015), *aff'd*, 621 F.App'x 200 (4th Cir. 2015), *cert. denied*, No. 15-8361, 2016 WL 777832 (U.S. June 6, 2016). Here, the complaint is devoid of facts regarding the requirements necessary for loan approval and Plaintiff's actual qualifications. Plaintiff also fails to allege that Defendant gave preferential treatment to applicants outside of the protected class with qualifications similar to his. At bottom, he does not plausibly allege "that discriminatory animus was a motivating factor in [Defendant's] decision to deny" his loan-related applications. *Letke*, 2015 WL 1438196, at *8.

Similarly, Plaintiff cannot maintain a discriminatory impact claim under the FHA.

> To establish a *prima facie* case of
> disparate impact discrimination [under the
> FHA], plaintiffs must show that a specific
> policy caused a significant disparate effect
> on a protected group. To do this, they must
> identify the problematic neutral practice at
> issue . . . . *Watson v. Fort Worth Bank &
> Trust*, 487 U.S. 977, 994 (1988). In making

> this showing, plaintiffs are required to
> prove only that a given policy had a
> discriminatory impact on them as
> individuals. *Betsey*, 736 F.2d at 987.
> Thus, to determine whether plaintiffs have
> met their burden, "[t]he correct inquiry is
> whether the policy in question had a
> disproportionate impact on the minorities in
> the total group to which the policy was
> applied." *Id.*

*Boardley*, 39 F.Supp.3d at 712 (citation omitted). To allege disparate impact under the FHA, "[a] plaintiff must identify the neutral practice at issue and cite statistical evidence demonstrating the discriminatory impact caused by the practice." *Letke v. Wells Fargo Home Mortgage, Inc.*, No. RDB-12-3799, 2015 WL 1438196, at *8 (D.Md. Mar. 27, 2015) (citing *Watson*, 487 U.S. at 994). Here, although Plaintiff relies on disparate impact cases, he fails even to identify a neutral policy or program implemented by Defendant that caused a significant disparate effect on a protected class. (*See* ECF No. 12, at 9). Furthermore, the complaint contains only conclusory assertions of discrimination based on race and offers no specific factual allegations regarding similarly situated customers outside of the protected class.[9] Plaintiff thus fails to state a discrimination claim under the FHA.

---

[9] Plaintiff, in his opposition brief, cites to the complaint at ¶¶ 48-51, 59-63, 67-68, 72-74 to support his assertion that "Defendant [] approved loans for applicants outside [the] borrower's protected class with similar loan qualifications as applicant but denied Plaintiff who was equally qualified." (ECF

### c.   Title VI Discrimination (Count IV)

Under Title VI, "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."   42 U.S.C. § 2000d.   "Program or activity" includes, *inter alia*, "all of the operations of an entire corporation, partnership, or other private organization, or sole proprietorship if assistance is extended to such corporation . . . as a whole; or which is principally engaged in the business of providing education, health care, housing, social services, or parks and recreation."   *Id.* § 2000d-4a(3)(A).   Title VI does not explicitly create a private right of action, but it is well-settled that individuals may sue to enforce that provision.   *Gaskins v. Baltimore City Pub. Schs.*, JKB-15-2961, 2016 WL 192535, at *8 (D.Md. Jan. 15, 2016) (citing *Alexander v. Sandoval*, 532 U.S. 275, 279 (2001)), *aff'd sub nom. Gaskins v. Abiodun*, No. 16-1066, 2016 WL 2944194 (4th Cir. May 20, 2016).

---

No. 12, at 8).   A review of the complaint, however, reveals that the cited paragraphs make no reference to similarly situated applicants receiving loans or access to credit from Defendant.

As noted above, to the extent that Plaintiff includes additional factual allegations in his response papers, they are insufficient to insulate the complaint from dismissal.   *See Mylan Labs.*, 770 F.Supp. at 1068.

18

To state a claim under Title VI, Plaintiff must plausibly allege that Defendant received federal financial assistance and engaged in intentional racial discrimination. *Farmer v. Ramsay*, 41 F.Supp.2d 587, 592 (D.Md. 1999).[10]  Plaintiff asserts that Defendant "denied Plaintiff a [h]ome loan modification under the [f]ederally funded [HAMP]" on the basis of his race and color. (ECF No. 1, at 15 ¶ 73).  After Defendant denied his November 2013 application for a HAMP modification, Plaintiff allegedly called the HAMP hotline in July 2015 and was informed that he qualified.  (*Id.* at 4-5 ¶¶ 19-23).  These allegations, which form the entire basis for Plaintiff's Title VI discrimination claim, lack clarity and factual support.  The complaint is devoid of allegations regarding Plaintiff's actual

---

[10]  "Financial assistance" contemplates grants, loans or subsidies without reciprocal services or benefits and not including contract of insurance or guaranty. *Leskinen v. UTZ Quality Foods, Inc.*, 30 F.Supp.2d 530, 534 (D.Md. 1998) (citations omitted).  HAMP provides incentives for lenders, through the establishment of servicer participation agreements with loan services providers, such as Defendant, to modify mortgages so struggling homeowners can stay in their homes. *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 772-73 (4th Cir. 2013) (citing the Economic Stabilization Act of 2008, Pub L. No. 110-343, 122 Stat. 3765 (2008), codified at 12 U.S.C. § 5201 *et seq.*).  "[S]ervicers agreed to identify homeowners who were in default or would likely soon be in default on their mortgage payments, and to modify the loans of those eligible under the program.  In exchange, servicers would receive a $1,000 payment for each permanent modification, along with other incentives."  *Id.* (quoting *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556-57 (7th Cir. 2012)).  Here, Defendant does not challenge whether its administration of HAMP constitutes "financial assistance" within the meaning of the statute.

qualifications for a loan modification through the federal program – either in November 2014 when Plaintiff applied or in July 2015 when he allegedly learned from the HAMP hotline that he was qualified.  Beyond conclusory assertions, Plaintiff fails plausibly to allege that he suffered discrimination on the basis of race.  *See Gaskins*, 2016 WL 192535, at *8 ("In the absence of a nexus to race, Title VI cannot deliver the relief that Plaintiff seeks.").  Plaintiff's claim in Count IV will be dismissed.

## 2. Title VI Retaliation (Count V)

To state a Title VI retaliation claim, Plaintiff must allege that: (1) he engaged in protected conduct; (2) he suffered an adverse action; and (3) a causal link exists between the protected conduct and the adverse action.  *Peters*, 327 F.3d at 320 *Peters v. Jenney*, 327 F.3d 307, 320 (4th Cir. 2003); *Howerton v. Bd. of Educ. of Prince George's Cty.*, No. TDC-14-0242, 2015 WL 4994536, at *17 (D.Md. Aug. 19, 2015).  A causal link is demonstrated if Plaintiff establishes that the "protected activity was a but-for cause of the alleged adverse action."  *Murphy-Taylor v. Hofmann*, 968 F.Supp.2d 693, 721 (D.Md. 2013) (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 133 S.Ct. 2517, 2534 (2013)).

Here, Plaintiff asserts only that "[t]he subsequent denial of [his] credit applications and loan modifications would not

have occurred but for his opposition to [Defendant's] discrimination during the processing of his credit application and his filing of various complaints with Federal and State government agencies and offices stated above." (ECF No. 1, at 16 ¶ 81). Again, Plaintiff's allegations of retaliation amount to nothing more than unwarranted factual inferences and legal conclusions that are insufficient to state a claim. Plaintiff does not identify with any specificity which "subsequent" credit and loan applications were denied as a result of purported retaliation. Plaintiff also fails to provide the relevant dates on which he allegedly lodged complaints with the OCC or other federal agencies and officials. (*See id.* at 5 ¶¶ 24-26, 7 ¶ 16, 8 ¶¶ 19-20). Absent some sense of a chronological timeline, allegations of a causal nexus are necessarily lacking. Accordingly, Plaintiff fails plausibly to connect his alleged reports and complaints – which, he asserts, constitute protected activity under Title VI – to the denial of his subsequent applications.[11]

### 3. Violations of the MCPA (Count VI)

Under the MCPA, "a person may not engage in any unfair or deceptive trade practice" related to "[t]he extension of

---

[11] Furthermore, Plaintiff provides no citation to case law or legal authorities in support of his assertion that his purported protected activity gives rise to a Title VI retaliation claim.

consumer credit" or the "collection of consumer debts."  Md.
Code Ann., Com. Law § 13-303.  Section 13-301(1) defines
"[u]nfair or deceptive trade practices" to include "false . . .
or misleading oral or written statement[s] . . . or other
representations . . . [that have] the capacity, tendency, or
effect of deceiving or misleading consumers."  To state an MCPA
claim, "a plaintiff must adequately plead that (1) the defendant
engaged in an unfair or deceptive practice or misrepresentation,
(2) the plaintiff relied upon the representation, and (3) doing
so caused the plaintiff actual injury."  *Turner v. J.P. Morgan
Chase, N.A.*, TDC-14-0576, 2015 WL 5021390, at *4 (D.Md. Aug. 21,
2015) (citing *Currie v. Wells Fargo Bank, N.A.*, 950 F.Supp.2d
788, 796 (D.Md. 2013)); *see Boardley*, 39 F.Supp.3d at 712-13.

Claims for unfair or deceptive trade practices under the
MCPA sound in fraud and must be pleaded with particularity.
*Haley v. Corcoran*, 659 F.Supp.2d 714, 724 n.10 (D.Md. 2009).
Subject to Rule 9(b)'s heightened pleading standard, Plaintiff
must allege "the time, place, and contents of the false
representations, as well as the identity of the person making
the misrepresentation and what he obtained thereby."  *Harrison*,
176 F.3d at 784 (citation and internal quotation marks omitted).
Here, the complaint does not allege unfair and deceptive
practices with particularity.  In his opposition papers,
Plaintiff: theorizes that the 7.25% interest rate on his

business line of credit is a "false and misleading representation" (ECF No. 12, at 17); introduces new allegations regarding alleged loan advertisements (*id.* at 17-18); and concludes, without any factual basis, that "[Defendant] did not intend to grant loan consolidation to qualified minority applicants like Plaintiff" as they had advertised (*id.* at 17). Furthermore, the complaint lacks allegations that that Plaintiff detrimentally relied upon any purported misrepresentations. *See Combs*, 2015 WL 5008754, at *6 ("[T]o assert a claim for false or misleading statements under the MCPA, [the plaintiff] must allege that the defendant's statement caused her an actual loss or injury." (citation omitted)). Plaintiff cannot rectify his omissions by introducing new allegations of actual injury through a declaration, which will be stricken as an improper surreply. *See supra* Part II. Accordingly, Plaintiff fails to state a claim under the MCPA in Count VI.

### 4. Breach of Contract (Count VII)

Plaintiff asserts that "Defendant [] breached the business line of credit agreement that Plaintiff [] signed with Wachovia" when it increased Plaintiff's interest rate from 3.25% to 7.25% without notification. (ECF No. 1, at 17 ¶ 88). To state a claim for breach of contract under Maryland law, Plaintiff must allege that he had a valid contract with Defendant and that Defendant failed to satisfy its contractual obligations. *See*

*Taylor v. NationsBank, N.A.*, 365 Md. 166, 175 (2001).   Beyond asserting that Defendant increased the interest rate on his business line of credit "in stark violation of his original contract," Plaintiff provides no relevant factual allegations. (ECF No. 1, at 4 ¶ 17).   He does not attach a specific contract, nor does he reference contractual terms or obligations from which the court could find plausible a breach of contract claim. Accordingly, Count VII will be dismissed.

## IV.   Conclusion

Although Plaintiff has not sought to amend the pleading, district courts have discretion to grant leave to amend "freely" and "when justice so requires."   Fed.R.Civ.P. 15(a)(2).   Here, Plaintiff will be granted the opportunity to amend the complaint to comply with federal pleading standards and remedy defects identified in this memorandum opinion.   The court expects that he will incorporate appropriate facts from his declaration and include allegations sufficient to "nudge[] [his] claims across the line from conceivable to plausible."   *Twombly*, 550 U.S. at 570; *see Giacomelli*, 588 F.3d at 193.   "The *Twombly* plausibility standard, which applies to all civil actions, does not prevent a plaintiff from pleading facts alleged 'upon information and belief' where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability

24

plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2$^d$ Cir. 2010) (citations and internal quotation marks omitted). Plaintiff is cautioned, however, that he "may not rely exclusively on conclusory allegations of unlawful conduct, even where alleged 'upon information and belief.'" *Doe v. Salisbury Univ.*, 123 F.Supp.3d 748, 768 (D.Md. 2015); *see Malibu Media, LLC v. Doe*, No. PWG-13-365, 2014 WL 7188822, at *4 (D.Md. Dec. 16, 2014). Accordingly, the court will grant Plaintiff 21 days within which to file an amended complaint.

For the foregoing reasons, Defendant's motion to strike and motion to dismiss will be granted.   A separate order will follow.

_____
                    /s/
DEBORAH K. CHASANOW
United States District Judge