IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| | * | |
| MAURICE GLENN, | * | |
| Plaintiff, | * | |
| v. | * | Civil Action No. PX 15-3058 |
| | * | |
| WELLS FARGO BANK, N.A., | * | |
| Defendant. | * | |

****** 

## MEMORANDUM OPINION

This is Plaintiff's second attempt to survive Defendant's challenge to the sufficiency of his Complaint. Because Plaintiff's Amended Complaint has done little to address the deficiencies that the Court identified in dismissing this action originally, many of Plaintiff's counts will suffer the same fate here. One critical difference, however, is that Plaintiff's Amended Complaint for the first time identified allegations stemming from a specific business account that Plaintiff held with Defendant, the terms of which compel arbitration for those claims.  As to the claims related to Plaintiff's business account, the Court grants Defendant's Motion to Dismiss because they are arbitrable (ECF No. 31). As to Plaintiff's non-arbitrable claims, the Court grants Defendant's Motion to Dismiss for failure to state a claim (ECF No. 31). The Court also denies as moot Defendant's Motion to Strike (ECF No. 35), grants Plaintiff's motion for an extension of time to file supplemental exhibits (ECF No. 33), and denies Plaintiff's motion for leave to file a surreply (ECF No. 38).

# I. BACKGROUND

## A.  Factual Background[1]

 Plaintiff Maurice Glenn ("Plaintiff"), who is African-American, banked with Wachovia

Bank, N.A. ("Wachovia") before it merged with Defendant Wells Fargo Bank, N.A.

("Defendant" or "Wells Fargo") in December 2008. Plaintiff maintained two accounts with

Wells Fargo—a business line of credit and a mortgage loan.[2] ECF No. 25 at 3. With regard to

Wachovia, Plaintiff obtained his business line of credit on May 29, 2007. ECF No. 25 at 3; ECF

No. 31-3 at 1–8. The 2007 Wachovia loan agreement provided for an interest rate "at a per

annum rate equal to the prime rate published in the 'Money Rates' section of the Eastern edition

of The Wall Street Journal (the 'WSJ Prime Rate') plus a margin of 1.10%." ECF No. 31-3 at 2;

ECF No. 25 at 4. Plaintiff alleges that despite the 3.25% interest rate associated with the line of

credit, he was allegedly charged an increased interest rate of 7.25% without notification and "in

stark violation of his original contract." ECF No. 25 at 5. Plaintiff contends Wells Fargo has also

never refunded Plaintiff the money paid in excess of the agreed upon interest as required by the

2007 Wachovia credit agreement. ECF No. 25 at 4–5.This same 2007 Wachovia loan agreement

contains an arbitration provision. ECF No. 31-3 at 5.

 In 2010, Plaintiff signed a Wells Fargo BusinessLine Authorization Form ("the

Authorization Form"), converting his account from Wachovia to a Wells Fargo BusinessLine

---

[1] When considering a motion to dismiss for failure to state a claim, the well-pleaded allegations in the complaint are accepted as true. *See Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011). Unless otherwise noted, the facts outlined here are alleged in the Amended Complaint and documents integral to the Amended Complaint are construed in the light most favorable to Plaintiff, the nonmoving party. *See Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013).

[2] In the Amended Complaint, Plaintiff at times refers to securing single home equity loan and at other times refers to more than one. *Compare, e.g.*, ECF No. 25 at 6 (referencing multiple home loans), *with* ECF No. 25 at 3, 6 (referencing a single home loan).

account. ECF No. 31-3 at 9–10; ECF No. 34-2.[3] The authorization form states that the signatory

has "read and agree[s] with the Terms and Conditions on the reverse side of the Authorization

Form."  ECF No. 31-3 at 9; ECF No. 34-2 at 1. The "Terms and Conditions" include a provision

requiring arbitration upon demand of any party in:

> . . . any action, dispute, claim or controversy of any kind, whether
> in contract or in tort, statutory or common law, legal or equitable,
> or otherwise, now existing or hereafter arising between the parties
> in any way arising out of, pertaining to or in connection with (1)
> any agreement, document or instrument to which this Arbitration
> Program is attached or in which it appears or is referenced, or any
> related agreements, documents or instruments . . .; (2) all past,
> present, or future loans, lines of credit, notes, instruments, drafts,
> credits, accounts, deposit accounts, safe deposit boxes, safekeeping
> agreements, guarantees, letters of credit, goods or services, or other
> transactions, contracts or agreements of any kind whatsoever; (3)
> any past, present or future incidents, omissions, acts, errors,
> practices, or occurrences causing injury to either party where the
> other party or its agents, employees or representatives may be
> liable, in whole or in part . . . .

ECF No. 31-3 at 12.

The 2010 BusinessLine Customer Agreement also contained a provision for amending

the contract:

> [The Wells Fargo] Bank may unilaterally change any of the terms
> of any of Customer's Accounts at Bank's sole discretion at any
> time. Bank will provide Customer with such notice as is required
> by law, by mailing such notice to Customer at the latest address
> shown in Bank's records. If Customer has elected to receive
> statements electronically, notices may be delivered to Customer
> electronically in the same manner that statements are delivered.
> Subject to applicable law and provided Bank does not notify
> Customer otherwise, any changes will apply to the current balance
> of its Accounts as well as to future balances.

---

[3] Both parties provide the Court with the Authorization Form; however, Plaintiff alleges he did not
receive a copy of the 2010 Wells Fargo BusinessLine Customer Agreement that was explicitly
incorporated into the terms and conditions of the Authorization Form. ECF No. 32 at 14.

The 2010 BusinessLine Customer Agreement further explained that "that use of any feature of the *BusinessLine* account or *BusinessLine*® MasterCard® card may be used as evidence of the foregoing authorizations, acceptances and agreements." ECF No. 31-2 at 10.

According to the Defendant, Wells Fargo then amended the contract governing the business account in an updated BusinessLine Customer Agreement, effective June 1, 2011 (the "2011 BusinessLine Customer Agreement"). ECF No. 31-3 at 16; ECF No. 36 at 11. The amendment also contained an arbitration provision identical to the provision in the 2010 BusinessLine Authorization Form. *Compare* ECF No. 31-3 at 11–12 (provision from 2010 agreement), *with* ECF No. 31-3 at 15 (provision from 2011 agreement).

Plaintiff alleges that between 2012 and 2014, Defendant denied Plaintiff's eleven lending applications based solely on his race. Specifically, the applications are:

- A July 30, 2012 credit application denied on August 15, 2012. ECF No. 25 at 11–12.
- A March 5, 2013 "mortgage refinance" or "loan consolidation" application denied on March 13, 2013. ECF No. 25 at 14.
- An April 29, 2013 or May 14, 2013 "reopened" mortgage refinance or fixed mortgage application denied after May 2013. ECF No. 25 at 15–16.
- A November 25, 2013, HAMP modification application denied on December 24, 2013. ECF No. 25 at 7.
- A December 9, 2013 rate decrease application for his business line of credit denied on December 13, 2013. ECF No. 25 at 10.
- A December 23, 2013 rate decrease application for his business line of credit denied on December 24, 2013. ECF No. 25 at 11.
- A January 29, 2014 HAMP modification application denied on February 7, 2014. ECF No. 25 at 7.[4]
- A February 13, 2014 application for an unknown type of loan. ECF No. 25 at 20.
- A February 20, 2014 mortgage refinance application denied in April of 2014. ECF No. 25 at 21.

---

[4] Plaintiff also refers to this application as a loan consolidation attempt, which according to Defendant, is unavailable under HAMP. ECF No. ECF No. 25 at 7

- A November 2014 mortgage refinance application denied on December 30, 2014. ECF No. 25 at 21–23.
- A July 2, 2015 HAMP modification application denied on July 7, 2015. ECF No. 25 at 8–9.

For each, Plaintiff baldly asserts that he was denied the above-described benefits because of his race but offers no detail as to whether he was qualified to obtain the benefits he sought or why his denial was race based. ECF No. 25 at 7–12, 14–16, 21–23. Only one of the above alleged denials does Plaintiff aver that a particular bank representative, Geetesh Kapoor, reacted negatively upon hearing that Plaintiff is African-American. ECF No. 25 at 13-14.[5] Notably, however, Plaintiff included the identical averments in his original complaint that has been deemed insufficient as a matter of law. *See* ECF No. 23 at 16.

Plaintiff also alleges in his Amended Complaint, as he did in his original Complaint, that he complained to United States Senator Benjamin Cardin, which Senator Cardin's Office then forwarded to Wells Fargo's Home Mortgage Office of Executive Complaints. ECF No. 25 at 15. As a result, Plaintiff contends that he was denied conversion of a business line of credit and a

---

[5] Defendant notes that the implementing regulations of the federal Equal Credit Opportunity Act ("ECOA"), 15 U.S.C. § 1691 *et seq.*, mandate that lenders request the race and ethnicity of applicants for credit secured by an applicant's dwelling. (ECF No. 31-2 at 11 (citing 12 C.F.R. § 202.13(a)(1))). Under the ECOA's implementing regulations:

> A creditor that receives an application for credit primarily for the purchase or refinancing of a dwelling occupied or to be occupied by the applicant as a principal residence, where the extension of credit will be secured by the dwelling, shall request as part of the application the following information regarding the applicant(s):
>
> (i) Ethnicity . . . ; and race . . . .

12 C.F.R. § 202.13(a)(1). Although § 202.5(b) provides that "[a] creditor shall not inquire about the race . . . of an applicant . . . in connection with a credit transaction," an explicit carve-out exists for information required by § 202.13. *Id.* § 202.5(a)(2) ("Notwithstanding paragraphs (b) through (d) of this section, a creditor shall request information for monitoring purposes as required by § 202.13 for credit secured by the applicant's dwelling."). *See also Garcia v. Vazquez*, No. EP-14-CV-377-RFC, 2015 WL 11545022, at *7 (W.D. Tex. July 24, 2015) (explaining the statutory scheme of the ECOA requires a lender to collect certain demographic information regarding a borrower applicant).

home equity loan "in retaliation for Plaintiff having filed a credit discrimination complaint against Wells Fargo with the office of Senator Cardin." ECF No. 25 at 16.

Then, on June 28, 2013, Glenn filed a complaint against Wells Fargo with the Consumer Financial Protection Bureau ("CFPB") concerning one of his mortgage refinance applications. ECF No. 25 at 17.  He also claims that he was denied participation in the Home Affordable Modification Program ("HAMP") and an interest rate decrease on his business line of credit in retaliation for the complaints to the CFPB and Senator Cardin. ECF No. 25 at 18–19.

Plaintiff lodged a complaint with the Office of the Comptroller of the Currency ("OCC") regarding Defendant's denial of his 2013 HAMP application. ECF No. 25 at 19. Once again, Plaintiff claims that his home mortgage refinance application was initially approved, but then Wells Fargo rescinded this approval in retaliation for his various government complaints. ECF No. 25 at 23.

### B.  Procedural History

Plaintiff initiated this action against Defendant on October 10, 2015. On November 9, 2015, Defendant moved to dismiss the complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). ECF No. 11.  On July 1, 2016, the Court granted Defendant's motion without prejudice and with leave to file an Amended Complaint. ECF No. 24; *see Glenn v. Wells Fargo Bank, N.A.*, No. CV DKC 15-3058, 2016 WL 3570274 (D. Md. July 1, 2016). Plaintiff then filed an Amended Complaint. ECF No. 25.

The Amended Complaint asserts the identical claims brought in his initial complaint: violations of the Federal Equal Credit Opportunity Act ("ECOA") 15 U.S.C. § 1691 (Count I); the Maryland Equal Credit Opportunity Act ("MECOA"), Md. Code Ann., Com. Law § 12-701 *et seq.* (Count II); the Fair Housing Act ("FHA"), 42 U.S.C. § 3601 *et seq.* (Count III); Title VI

of the Civil Rights Act of 1964 ("Title VI"), 42 U.S.C. § 2000d *et seq.* (Count IV); and

Retaliation under Title VI of the Civil Rights Act of 1964 (Count V); and breach of contract

(Count VI).

Defendant moves to dismiss all claims related to Plaintiff's business line of credit under

Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction because the agreement between it

and Plaintiff compels arbitration. ECF No. 31. As to the remaining claims, Defendant urges the

Court to dismiss pursuant to Rule 12(b)(6) because Plaintiff's Amended Complaint does not

allege sufficient facts to sustain the claims as a matter of law.

Plaintiff responded in opposition, ECF No. 32, and then five days later submitted a

motion for an extension of time to file supplemental exhibits to accompany his response brief.

ECF Nos. 33, 34. Defendant opposes Plaintiff's motion to file supplemental exhibits and moves

to strike the supplemental exhibits and accompanying affidavit. ECF No. 35. Defendant has

replied to its motion to dismiss. ECF No. 36. Plaintiff has moved to file a surreply to the motion

to dismiss. ECF No. 38.

## II.  ANALYSIS

### A.  Plaintiff's Motion to File Surreply

This Court retains discretion to accept surreply briefs, but they are generally

disfavored. *See Chubb & Son v. C.C. Complete Servs., LLC*, 919 F. Supp. 2d 666, 679 (D. Md.

2013). *See also* Local Rule 105.2(a) ("[u]nless otherwise ordered by the court, surreply

memoranda are not permitted to be filed"). Courts may allow a surreply when "the moving party

would be unable to contest matters presented to the court for the first time in the opposing

party's reply." *Khoury v. Meserve*, 268 F. Supp. 2d 600, 605 (D. Md. 2003), *aff'd*, 85 F. App'x.

960 (4th Cir. 2004).

Plaintiff requests leave of the Court to file a surreply to further address Defendant's motion to compel arbitration. Plaintiff contends that Defendants are now asserting in their reply brief that Plaintiff's mortgage agreement subjects him to arbitration. Plaintiff is incorrect. Defendant has solely argued, as it did in its motion and supporting brief, that claims stemming from Plaintiff's business line of credit are subject to arbitration. Plaintiff has addressed Defendants arguments in its brief in opposition. Thus, Plaintiff's Motion to File a Surreply is denied.

### B. Plaintiff's Motion for an Extension of Time to File Exhibits

Before the Court reviews Defendant's Motion to Dismiss, the Court must address Plaintiff's motion to file the exhibits that were originally intended to append his response in opposition to Defendant's motion.[6] Plaintiff contends the extension is warranted under Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure.  Rule 6(b)(1)(B) allows a district court to extend time to file "on motion made after the time has expired if the party failed to act because of excusable neglect."  Excusable neglect is "at bottom an equitable [inquiry], taking account of all relevant circumstances," including: (1) the danger of prejudice to the non-movant; (2) the length of the delay and its potential impact on judicial proceedings; (3) the reason for the delay, including whether it was in the reasonable control of the movant; and (4) whether the movant acted in good faith. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993); *see also Fernandes v. Craine*, 538 F. App'x. 274 (4th Cir. 2013).

---

[6] Plaintiff seeks to leave of the Court to file five documents: (1) an affidavit of the Plaintiff, ECF No. 34; (2) business documents for Concentric Publications, ECF No. 34-1; (3) a May 10, 2010 Authorization Form devoid of the Wells Fargo BusinessLine Customer Agreement, ECF No. 34-2; (4) an article titled "Unfair Lending: The Effect of Race and Ethnicity on the Price of Subprime Mortgages," ECF No. 34-3; and (5) an article titled "The Intergenerational Transmission of Context," 34-4.

Plaintiff timely filed his response brief on September 1, 2016 but was unable to file his affidavit due to a medical condition. ECF No. 37 at 2. Instead, Plaintiff filed the present motion and attached exhibits five days later on September 6, 2016. ECF No. 34. Given that the exhibits and affidavit followed closely behind the Plaintiff's response and did not prejudice Defendant, the Court finds the delay to be the result of excusable neglect, grants the extension, and accepts the supplemental filings. *See* Fed. R. Civ. P. 6(b)(1)(B); *Pioneer Inv. Servs. Co.*, 507 U.S. at 395. For the purposes of Rules 12(b)(6) and 56, the Court will address the extent it considers the supplemental affidavit and exhibits in accordance with the respective standard of review.

### C.  Defendant's Motion to Compel Arbitration

#### 1.  Standard of Review

"Motions to compel arbitration in which the parties dispute the validity of the arbitration agreement are treated as motions for summary judgment." *Roach v. Navient Sols. Inc.*, 165 F. Supp. 3d 343, 347 (D. Md. 2015); *Rose v. New Day Fin., LLC*, 816 F. Supp. 2d 245, 251 (D. Md. 2011); *see also id.* at 252 n.5 ("If the parties dispute the existence of an arbitration agreement, the court must 'hear the parties' on the issue, and the party alleged to have violated the arbitration agreement is entitled to a jury trial on the existence of an agreement. Standard summary judgment rules apply." (quoting 9 U.S.C. § 4 and citing *Shaffer v. ACS Gov't Servs., Inc.*, 321 F. Supp. 2d 682, 684 n.1 (D. Md. 2004)). Thus, to the extent that any of the supplemental exhibits provided by either party assist in determining the arbitrability of Plaintiff's claims, the Court will consider them.

When evaluating a motion for summary judgment, the Court will grant judgment to the movant who shows that (1) there is no genuine dispute as to any material fact and (2) the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986) (citing predecessor to current Rule 56(a)). If sufficient evidence exists for a reasonable jury to render a verdict in favor of the party opposing the motion, then a genuine dispute of material fact is presented and summary judgment should be denied. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). However, the "mere existence of a scintilla of evidence in support of the [opposing party's] position" is insufficient to defeat a motion for summary judgment. *Id.* at 252. The facts themselves, and the inferences to be drawn from the underlying facts, must be viewed in the light most favorable to the opposing party, *Scott v. Harris*, 550 U.S. 372, 378 (2007); *Iko v. Shreve*, 535 F.3d 225, 230 (4th Cir. 2008), who may not rest upon the mere allegations or denials of his pleading but instead must set out specific facts showing a genuine dispute for trial by affidavit or other evidentiary showing. Fed. R. Civ. P. 56(c)(1).

### 2.   Arbitration of Business Line of Credit Claims

Defendant seeks to an order compelling arbitration of Plaintiff's claims and issues relating to the Wells Fargo BusinessLine account pursuant to the Federal Arbitration Act ("FAA" or "the Act") and in accord with the arbitration clause incorporated into the Authorization Form, ECF No. 31-3 at 9–12, converting his business account from a Wachovia account to a Wells Fargo account, and subsequent versions of his customer agreement. ECF No. 31-2 at 25; ECF No. 31-3.

The FAA makes clear that, in any contract involving interstate commerce, an agreement to arbitrate shall be "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act provides "two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, §

4." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983), *superseded on other grounds as stated in Bradford–Scott Data Corp. v. Physician Computer Network, Inc.*, 128 F.3d 504, 506 (7th Cir.1997). The Act "reflects an 'emphatic federal policy in favor of arbitral dispute resolution.'" *KPMG LLP v. Cocchi*, 132 S. Ct. 23, 25 (2011) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.*, 473 U.S. 614, 631 (1985)). Accordingly, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H. Cone*, 460 U.S. at 24–25, and the Court must not deny a party's request to arbitrate "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute," *Greenville Hosp. Sys. v. Emp. Welfare Benefit Plan*, 628 F. App'x. 842, 845–46 (4th Cir. 2015) (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582–83 (1960)). The "party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Roach*, 165 F. Supp. 3d at 347 (quoting *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000)).

Despite this presumption favoring alternative dispute resolution, arbitrability is at bottom a question of contract interpretation: a party cannot be required to arbitrate a dispute if it has not contractually agreed to do so. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002) (quoting *Arrants v. Buck*, 130 F.3d 636, 640 (4th Cir. 1997)). Thus, "a litigant can compel arbitration under the FAA if he can demonstrate '(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction . . . to interstate or foreign commerce, and (4) the failure, neglect or refusal of the [opposing party] to arbitrate the dispute.'" *Grant–Fletcher v. Collecto, Inc.*, Civ. No. RDB–13–3505, 2014 WL 1877410, at *5 (D. Md. May 9, 2014) (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)) (second alteration in original).

State contract law determines the validity of an arbitration agreement. *Hill v. PeopleSoft USA, Inc.*, 412 F.3d 540, 543 (4th Cir. 2005). "A federal court exercising diversity jurisdiction is obliged to apply the substantive law of the state in which it sits, including the state's choice-of-law rules." *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 599–600 (4th Cir. 2004) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). Because Plaintiffs brought this lawsuit in Maryland, the Court applies Maryland's choice of law rules to determine which state law to apply. *Perini/Tompkins Joint Venture v. Ace Am. Ins. Co.*, 738 F.3d 95, 100 (4th Cir. 2013).

As to a contract claim, Maryland applies the law of the state where the contract was made ("*lex loci contractus*"), unless the parties to the contract agreed to be bound by the law of another state. *Am. Motorists Ins. Co. v. ARTRA Grp., Inc.*, 338 Md. 560, 573 (1995). "As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445 (2006).

In both the 2010 BusinessLine Customer Agreement and the 2011 BusinessLine Customer Agreement, the arbitration provision contains an identical South Dakota choice of law clause. ECF No. 31-3 at 12, 15 ("This Arbitration Program shall be construed in accordance with the Federal Arbitration Act, other applicable Federal law, and applicable law of the state of South Dakota unless and except to the extent that another state's law is specifically designated for certain purposes herein.").[7] Accordingly, with regard to the arbitration provision, the Court shall apply South Dakota law.

According to Defendant, the 2011 BusinessLine Customer Agreement binds Plaintiff to arbitration related to disputes about Plaintiff's business account. ECF No. 36 at 13. Defendant

---

[7] Defendant also provides a November 1, 2015 Wells Fargo BusinessLine Customer Agreement, ECF No. 31-3 at 17 to 25, which was not in effect during the time period at issue.

asserts that Plaintiff signed a 2007 Wachovia Agreement opening Plaintiff's business account. Then, Plaintiff's execution of the Authorization Form, which converted the account holder from Wachovia to Wells Fargo, expressly incorporated the 2010 BusinessLine Customer Agreement and subjected Plaintiff to its broad arbitration clause. The 2011 BusinessLine Customer Agreement itself also contained a broad arbitration clause, encompassing any dispute relating to Plaintiff's business line of credit. ECF No. 31-2 at 25. Alternatively, Wells Fargo contends it would be entitled to enforce the May 29, 2007 Wachovia Agreement as the successor by merger to Wachovia. ECF No. 36 at 13.

Plaintiff disputes the existence of a valid arbitration agreement on several grounds: (1) Plaintiff was not a party to the contract, ECF No. 32 at 9; (2) Plaintiff did not receive the BusinessLine Customer Agreements, ECF No. 32 at 14; (3) the Authorization Form is vague and ambiguous, ECF No. 32 at 13; (4) the arbitration provision was inconspicuous, ECF No. 32 at 18; and (5) the arbitration agreements are unconscionable, ECF No. 32 at 18.[8]

Plaintiff does not dispute, however, that he signed the 2010 Authorization Form which incorporates the contemporaneous BusinessLine Customer Agreement and its arbitration provision. Rather, Plaintiff asserts that the Authorization Form does not bind Plaintiff because he is a guarantor, rather than a party, of the business line of credit. ECF No. 32 at 9.[9] Plaintiff alleges that based on the May 10, 2010 Authorization Form, "ownership of [the business line of

---

[8] To the extent Plaintiff asserts that the Authorization Form and Business Line agreements in their entirety are unenforceable because they are adhesion contracts, those issues are for the arbitrator, and not this Court, to decide. *Jacobs v. McCrory*, Case No. H-85-3294, 1986 WL 10901, at *4 (D. Md. Aug. 26, 1986).

[9] While this new allegation is an attempt to defeat the motion to compel arbitration, *see* ECF No. 32 at 9, this allegation, if taken as true, would divest Plaintiff of standing to pursue any claims stemming from the business line of credit. *See Wincopia Farms, LP v. G & G, LLC*, Case No. WDQ-11-1159, 2011 WL 6440004, at *4 & n.11 (D. Md. Dec. 15, 2011), *aff'd* 499 Fed. Appx. 233 (4th Cir. 2012) (stating that a guarantor has standing to assert defenses to prevent collection of debt only but not affirmative claims).

credit] had now changed to Concentric Publications the company that was publishing books." ECF No. 32 at 9, 30-31. In support, Plaintiff provides the Employer Identification Number for Concentric Publications, ECF No. 34-1, Plaintiff's business use for the line of credit, ECF No. 25 at 25.

As evidenced by the signature authorization for the 2007 Wachovia account, ECF No. 31-3 at 8, and the Authorization Form, ECF No. 31-3 at 9, Concentric Publication is a sole proprietorship of Plaintiff. A sole proprietorship is not a legal entity separate from its owner; rather, a sole proprietorship is merely the alter ego of the proprietor. 1 *Fletcher Cyc. Corp.* § 23 ("A sole proprietorship is merely a designation assigned to a manner of doing business by an individual who is solely responsible for all of the debts and obligations of the business; no legal distinction exists between the individual and the business.").

Plaintiff signed the 2007 Wachovia Agreement as the borrower, ECF No. 31-3 at 1, and signed the Authorization Form as the sole proprietor of Concentric Publication. ECF No. 31-3 at 9. Accordingly, Plaintiff is bound by the terms of the Agreement. Plaintiff has proffered nothing to upset this analysis. *See Int'l Multifoods Corp. v. Mardian*, 379 N.W.2d 840, 846 (S.D. 1985) ("The nature and extent of the liability of a guarantor depends on the terms of the contract of guaranty. . . .").  In fact, to credit Plaintiff's argument here would beg the question of his standing to assert any individual claims as opposed to ones brought solely on behalf of the business entity. Thus, the Court finds that Plaintiff is bound to the terms of the 2007 Wachovia Agreement and the Authorization Form.

With regard to the 2010 Authorization Form, Plaintiff acknowledges signing the documents, but claims to have not received the 2010 BusinessLine Customer Agreement that is incorporated by reference. Plaintiff makes similar claims regarding 2011 BusinessLine Customer

14

Agreement, ultimately contending that he is not bound by their terms. ECF No. 32 at 31. Plaintiff is incorrect.

In South Dakota, the "elements essential to the existence of a contract are: (1) parties capable of contracting; (2) their consent; (3) a lawful object; and (4) sufficient cause or consideration." *Schwalm v. TCF Nat'l Bank*, No. CIV. 16-4074-KES, 2016 WL 7468016, at \*2 (D.S.D. Dec. 28, 2016) (quoting SDCL § 53–1–2). A contract may incorporate contractual terms by reference to a separate unsigned document or agreement. 11 *Williston on Contracts*, § 30:25 (4th ed.); *accord Talley v. Talley*, 566 N.W.2d 846, 851 (S.D. 1997) (citing *Baker v. Wilburn*, 456 N.W.2d 304, 306 (S.D. 1990)) ("Writings connected by internal references to each other and involving the same subject matter constitute a single contract for the entire transaction."). South Dakota law "places primacy upon documents containing all elements of a contract, so as to indicate a true meeting of the minds—the full benefit of a contract cannot be conveyed without a meeting of the minds." *Dakota Foundry, Inc. v. Tromley Indus. Holdings, Inc.*, No. 1:11-CV-01026, 2012 WL 32440, at \*5 (D.S.D. Jan. 5, 2012) (citing *Vander Heide v. Boke Ranch, Inc.*, 736 N.W.2d 824, 832 (S.D.2007)).

A party is presumed to have to understood and agreed to the terms of an agreement that he signed. *United States v. Fink*, 393 F. Supp. 2d 935, 940 (D.S.D. 2005) (citing *Farlow v. Chambers*, 21 S.D. 128 (S.D. 1907)) (rejecting plaintiffs' conclusory argument that they did not understand the contract at issue). The question of mutual consent is determined by considering the parties' actions, as well as their words. *Dakota Foundry*, 2012 WL 32440, at \*4 (citing *In re Estate of Neiswender*, 660 N.W.2d 249, 253 (S.D. 2003)). "An offeree that takes the benefit of services offered is bound by the terms of the offer if the offeree had a reasonable opportunity to

reject them." *Id.* (quoting *Masteller v. Champion Home Builders, Co.*, 723 N.W.2d 561, 565 (S.D. 2006) (citing E. Allan Farnsworth, *Contracts* § 3.15, at 156 (2d ed. 1990)).

Here, the completed and signed Authorization Form created a binding contract between Plaintiff and Defendant that included an arbitration provision. In the 2010 Authorization Form (and directly above Plaintiff's undisputed signature) appears the statement: "I certify that I have read and agree with the Terms and Conditions on the reverse side of this Authorization Form . . . ." ECF No. 34-2 at 1. The reverse side of the Authorization Form further states: "By signing the front of this Authorization Form, I accept on behalf of the Business named on reverse ('Customer') the terms and conditions of this Authorization, including the terms and conditions of the Wells Fargo BusinessLine Customer Agreement that has been provided to Customer with this Authorization." ECF No. 34-2 at 2. Because Plaintiff's signature confirms that he received and agrees to the terms of the 2010 BusinessLine Customer Agreement, the Court finds Plaintiff agreed to the terms of the arbitration clause. *Schwalm*, 2016 WL 7468016, at *4 (finding plaintiff had notice of the arbitration agreement where she signed a statement saying she had received the policy).

Plaintiff contends that he never assented to the 2011 BusinessLine Customer Agreement because it does not contain his signature. If true, this is of no moment because the 2010 makes clear that the arbitration clause "shall survive any termination, amendment, or expiration of the Documents or the Relationship, unless the parties otherwise expressly agree in writing." ECF No. 31-3 at 12.  Accordingly, even though the 2010 BusinessLine Customer Agreement further allows the Defendant to change unilaterally the terms of the agreement, it also provides that Plaintiff must receive notice of such change. ECF No. 31-3 at 12. Here, no evidence exists that

Plaintiff received such notice. Thus, the Court finds that the arbitration provision in the 2010 Business Line Agreement controls.[10]

Plaintiff asserts that he should not be bound by the 2010 Business Line Agreement arbitration provision because it was "buried in miniscule small print," and thus inconspicuous. ECF No. 32 at 18. The clause itself belies Plaintiff's claim. Like all other provisions in the contract, it begins with a title in all capital and bolded letters that reads "**ARBITRATION PROGRAM**." The arbitration terms are then clearly set out in easy to read typeface identical to the remaining terms of the Agreement. *See Meyers v. Am. States Ins. Co.*, 926 F. Supp. 904, 912 (D.S.D. 1996) (finding a clearly worded disclaimer in all capitalized letters as conspicuous). Thus, the arbitration provisions are sufficiently conspicuous to survive challenge.

Plaintiff lastly contends the arbitration is unconscionable[11] because refusal to arbitrate would, by the provision's terms, "be forced to pay the costs of the party demanding arbitration [in compelling arbitration of any dispute]." ECF No. 32 at 18. This term does not render the provision unconscionable.

The South Dakota Supreme Court has defined unconscionable contracts as "[o]ne-sided agreements without a remedy for another party's breach." *Schwalm*, 2016 WL 7468016, at *4 (quoting *Baldwin v. Nat'l Coll.*, 537 N.W.2d 14, 17 (S.D. 1995)) (internal quotations omitted). "'Overly harsh or one-sided terms," are substantively unconscionable, whereas lack of meaningful choice, coercion or duress may constitute procedural unconscionability. *Nygaard v.*

---

[10] The 2011 Customer Agreement contains an identical arbitration provision. *Compare* ECF No. 31-3 at 11–12 (provision from 2010 agreement) with ECF No. 31-3 at 15 (provision from 2011 agreement).

[11] To the extent Plaintiff asserts that the Authorization Form and Business Line agreements in their entirety are unenforceable because they are adhesion contracts, those issues are for the arbitrator, and not this Court, to decide. *Jacobs v. McCrory*, Case No. H-85-3294, 1986 WL 10901, at *4 (D. Md. Aug. 26, 1986).

*Sioux Valley Hosps. & Health Sys.*, 731 N.W.2d 184, 195 (S.D. 2007) (quoting *Johnson v. John Deere Company*, 306 N.W.2d 231, 237 (S.D. 1981)).

The Plaintiff points to a standard fee shifting provision that applies to either party should either side improperly contest arbitration as grounds to argue the clause is unconscionable. The fee shifting provision is neither extraordinary nor one-sided.  Thus, Plaintiff failed to meet the high threshold of demonstrating the provision is unconscionable.

### a.   Waiver of the Right to Arbitrate

Plaintiff also contends that Wells Fargo has waived its right to arbitrate by making its demand eleven months after the original action was filed in this Court. ECF No. 32 at 19–20. The Court is not persuaded. Plaintiff ignores that he clarified for the first time in his Amended Complaint the exact business line of credit that he is challenging. Accordingly, Defendants only learned via the Amended Complaint the specific line of credit at issue. That said, even if eleven months have passed, the procedural posture of this case has remain essentially unchanged, visiting no prejudice to Plaintiff to warrant denial of the motion to compel arbitration.

A party waives its right to demand arbitration *only when* its invocation "so substantially utilizes the litigation machinery that to subsequently permit arbitration would prejudice the party opposing the stay." *Developers Sur. & Indem. Co. v. Resurrection Baptist Church*, 759 F. Supp. 2d 665, 673 (D. Md. 2010) (quoting *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001)). The party objecting to arbitration must demonstrate "*actual prejudice*" to establish waiver. *MicroStrategy*, 268 F.3d at 249 (quoting *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir. 1987)) (emphasis in original). If the moving party engages in litigation before asking the court for arbitration, the court must still ask "whether the

party objecting to arbitration has suffered *actual prejudice.*" *Id.* (citation omitted) (emphasis in original).

      To determine actual prejudice, a court must look at the length of delay and the degree to which the parties have already litigated the case at the time of the motion to compel arbitration. *Resurrection Baptist Church*, 759 F. Supp. 2d at 673 (citing *MicroStrategy*, 268 F.3d at 252). However, in light of the federal policy favoring arbitration, courts "will not lightly infer the circumstances constituting waiver." *Patten Grading & Paving, Inc. v. Skanska USA Bldg., Inc.*, 380 F.3d 200, 204 (4th Cir. 2004) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging, Inc.*, 96 F.3d 88, 95 (4th Cir. 1996)).

      Defendant filed its motion to dismiss and to compel arbitration upon first learning of the particular business line of credit in the Amended Complaint. The parties have not engaged in discovery and, as discussed below, Plaintiff's remaining claims are dismissed. Plaintiff is not prejudiced, therefore, by Defendant's filing at this juncture. *See MicroStrategy*, 268 F.3d at 249 ("Neither delay nor the filing of pleadings by the party seeking a stay will suffice, without more, to establish waiver of arbitration."); *Resurrection Baptist Church*, 759 F. Supp. 2d at 673–74 (no waiver where motion to stay filed six months after filing of complaint); *Sedelnikova v. The Cheesecake Factory Restaurant, Inc.*, Case No. AW-09-2398, 2010 WL 2367387, at *7 (D. Md. June 7, 2010) (no waiver of an arbitration provision even though the defendant had removed the action from state court and the plaintiff had devoted "significant time" to drafting discovery requests and preparing for depositions.).

      Plaintiff's only claimed prejudice in arbitration is incurring attorney's fees and costs. ECF No. 32 at 20. However, "incurring legal expenses inherent in litigation is, without more, 'insufficient evidence of prejudice to justify a finding of waiver.' " *Patten*, 380 F.3d at 208

(quoting *PPG Indus, Inc. v. Webster Auto Parts, Inc.*, 128 F.3d 103, 107 (2d Cir. 1997); *see also*

*Sedelnikovai*, 2010 WL 2367387, at *7 (stating that the costs associated with limited

participation in discovery and delay were insufficient to support waiver). Waiver simply does not

lie where "parties seeking to arbitrate merely answer pleadings and engage in minimal

discovery." *Resurrection Baptist Church*, 759 F. Supp. 2d at 673; *see also Goel Servs., Inc. v.*

*Kevin Dockett, Sr. Trucking, Inc.*, Case No. 8:12-cv-01377-AW, 2012 WL 5252057, at *5 (D.

Md. Oct. 22, 2012) ("[A] party's mere filing of pleadings and subsequent attempt to arbitrate is

insufficient, per se, to show actual prejudice.").

Plaintiff's last attempt to support waiver is his least persuasive.  Plaintiff claims that

Wells Fargo breached the terms of the agreement by not filing its motion to compel arbitration

within 60 days after the filing of the original complaint.  However, the 2010 *BusinessLine*

Customer Agreement permits either party to demand arbitration within 60 days after service of a

"complaint . . . *or any amendment*" to a complaint filed in a judicial proceeding. ECF No. 31-3 at

11, 15 (emphasis added). Accordingly, Plaintiff can find no support for his textual argument in

the text itself.  Thus, Defendant's Motion to Compel arbitration as to those claims arising from

the 2007 business line of credit is granted.

### b.  Separation of Claims

Finally, the Court must determine if the entire case should be stayed pending arbitration

of Plaintiff's breach of contract claim and issues related to Plaintiff's business line of credit.

Neither party has addressed this issue.

The FAA requires separation of arbitrable issues from nonarbitrable ones, and

arbitrability is to be determined on an issue-by-issue basis without regard to the way the issues

are grouped into claims. *Summer Rain v. Donning Co./Publishers, Inc.*, 964 F.2d 1455, 1460 (4th

Cir. 1992), *as amended* (June 23, 1992) (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 216–17 (1985)). Section 3 of the FAA "provides the right to a stay only on an issue 'referable to arbitration under an agreement in writing for such arbitration.'" *Summer Rain*, 964 F.2d at 1460 (quoting 9 U.S.C. § 3). "[W]hen deciding whether a dispute is arbitrable, courts may not judge the merits of the claim put forward. Even claims that courts mat meritless are entitled to arbitration if the parties agreed in their contract that such issues were arbitrable." *Gen. Drivers, Warehousemen & Helpers Local Union No. 509 v. Ethyl Corp.*, 68 F.3d 80, 83 (4th Cir. 1995) (citation omitted).   "The decision whether to stay the litigation of non-arbitrable issues is a matter largely within the district court's discretion to control its docket." *Id.   See also Summer Rain*, 964 F.2d at 1461 (citing *Moses H. Cone*, 460 U.S. at 20 n.23).

Plaintiff's claims arising from the Defendant's denials of home and non-business loan applications are not subject to the arbitration clause of the 2010 Wells Fargo BusinessLine Customer Agreement and are readily severable from arbitrable issues regarding Plaintiff's business line of credit. *Cf. Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (holding that district courts are required to compel arbitration of claims subject to arbitration clause "even if the result is 'piecemeal' litigation"). Plaintiff's Amended Complaint has provided that for each individual loan application, he was denied on the basis of race lending itself to claims under the ECOA, MECOA, FHA, and Title VI. The legal sufficiency of these claims do not depend on the resolution of an arbitrable issue. *Cf. Summer Rain*, 964 F.2d at 1461 (staying non-arbitrable issue of what monies were owed because it depended on the resolution of the arbitrable issue of whether the defendants breached the contract at issue). Thus, a complete stay of the litigation is not warranted. The Court will now address the merits of Defendant's Motion to Dismiss.

### D. Defendant's Motion to Dismiss

#### 1. Standard of Review

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When ruling on a motion under Rule 12(b)(6), the court must "accept the well-pled allegations of the complaint as true," and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). "The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Moreover, a plaintiff cannot amend his complaint through briefing or oral advocacy in an attempt to avoid dismissal. *Nat'l Fed'n of the Blind, Inc. v. Loompanics Enterprises, Inc.*, 936 F. Supp. 1232, 1243 (D. Md. 1996) (citing *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984); *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 449 (4th Cir. 2011) ("[S]tatements by counsel that raise new facts constitute matters beyond the pleadings and cannot be considered on a Rule 12(b)(6) motion.")).

To survive a motion to dismiss, a complaint's factual allegations "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters*, 684 F.3d at 439 (citation omitted). "Thus,

while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Ordinarily, a court "is not to consider matters outside the pleadings or resolve factual disputes when ruling on a motion to dismiss." *Bosiger v. U.S. Airways, Inc.*, 510 F.3d 442, 450 (4th Cir. 2007). However, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see e.g.*, *Darcangelo v. Verizon Commc'ns, Inc.*, 292 F.3d 181, 195 n.5 (4th Cir. 2002) (stating that district court correctly considered ERISA plan agreement because plaintiff referred to and relied on the existence of "an agreement for medical-related services" between herself and defendants); Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). To be "integral," a document must be one "that by its very existence, and not the mere information it contains, gives rise to the legal rights asserted." *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011) (internal quotations and emphasis omitted).

The Court will not consider the declaration of Maurice Glenn nor his supplemental exhibits filed in support of Plaintiff's response in opposition because they do not form the basis of Plaintiff's claims and are not necessary to resolve the Motion to Dismiss. *See* ECF No. 34.

### 2.   Analysis

#### a.   Violations of the ECOA (Count I) and MECOA (Count II)

The ECOA prohibits creditors from discriminating "with respect to any credit transaction on the basis of race, color, religion, national origin, sex or marital status, or age." *Piotrowski v.*

*Wells Fargo Bank, N.A.*, No. DKC–11–3758, 2013 WL 247549 at *6 (D. Md. Jan. 22, 2013);

(quoting *Capitol Indem. Corp. v. Aulakh*, 313 F.3d 200, 202 (4th Cir. 2002) (quoting 15 U.S.C. § 1691(a)(1))) (internal quotation marks omitted). The MECOA is modeled after the federal ECOA. *See Patton v. Wells Fargo Fin. Md., Inc.*, 437 Md. 83, 85 (Md. 2014). To assert a claim for lending discrimination under the ECOA and MECOA the complaint must allege that: (1) Plaintiff is a member of a protected class; (2) he was qualified for the benefit he sought; and (3) despite those qualifications, he was rejected on discriminatory grounds. *Boardley v. Household Finance Corp.*, 39 F. Supp. 3d 689, 710–11 (citing *Letke v. Wells Fargo Home Mortg., Inc.*, No. RDB-12-3799, 2013 WL 6207836, at *4 (D. Md. Nov. 27, 2013)).

The same deficiencies that plagued Plaintiff's original complaint lie here. Legal conclusions couched as factual allegations are insufficient to survive dismissal, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations without any reference to actual events. *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979); *see also Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009). Plaintiff's Amended Complaint provides almost no information regarding the terms of his purported credit approvals, the requirements necessary for approval, or, critically, Plaintiff's actual qualifications when he submitted each purported credit application. *See Boardley*, 39 F. Supp. 3d at 711 ("[B]ecause . . . Plaintiffs do not allege their qualifications, Plaintiffs' pleadings fall short with regard to their ECOA lending discrimination claim."); *Combs v. Bank of Am., N.A.*, No. GJH-14-3372, 2015 WL 5008754, at *3 (D. Md. Aug. 20, 2015) ("Although she alleges that she is a member of a protected class, she fails to adequately allege that she met the qualifications for loan modification and was denied despite her qualifications. In fact, Plaintiff does not indicate what qualifications were at issue."). Plaintiff's "[t]hreadbare recitals of the elements of [the] cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal*, 556 U.S. at 678–79. Accordingly, Plaintiff has once again failed to state an ECOA or MECOA claim for discriminatory lending.

### b. Violation of the FHA (Count III)

The Fair Housing Act (FHA) provides private citizens a right of action against those who discriminate against them in the housing market. Under the FHA, it is "unlawful for any person or other entity whose business includes engaging in residential real estate-related transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race . . . ." 42 U.S.C. § 3605(a). To state a claim under the FHA, Plaintiff must allege that he suffered discrimination within the meaning of the FHA through discriminatory intent or discriminatory impact. *Robinson v. Bd. of Cnty. Comm'rs for Queen Anne's Cnty., MD*, No. RDB-07-1903, 2008 WL 2484936, at *9 (D. Md. June 19, 2008) (citing *Betsey v. Turtle Creek Assocs.*, 736 F.2d 983, 986 (4th Cir. 1984)).

To allege discriminatory intent under the FHA, a plaintiff may either offer direct evidence of discrimination or invoke the *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), burden-shifting framework. *Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1451 (4th Cir. 1990). In this context, "[d]irect evidence encompasses conduct or statements that both (1) reflect directly the alleged discriminatory attitude, and (2) bear directly on the contested [housing] decision." *Laing v. Fed. Express Corp.*, 703 F.3d 713, 717 (4th Cir. 2013) (quoting *Warch v. Ohio Cas. Ins. Co.*, 435 F.3d 510, 520 (4th Cir. 2006)) (internal quotation marks omitted).

Under the *McDonnell Douglas* burden-shifting framework, a plaintiff need not show that discriminatory animus was the primary or dominant purpose, but only that it was a motivating factor. *Letke v. Wells Fargo Home Mortg., Inc.*, No. RDB-12-3799, 2015 WL 1438196, at *7 (D.

Md. Mar. 27, 2015) (citing *Smith & Lee Assocs., Inc. v. City of Taylor*, 102 F.3d 781, 790 (6th

Cir. 1996)). "[W]hile a plaintiff is not required to plead facts that constitute a prima facie case in

order to survive a motion to dismiss, 'factual allegations must be enough to raise a right to relief

above the speculative level.'" *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th

Cir. 2010), *aff'd sub nom.*, *Coleman v. Court of Appeals of Maryland*, 132 S. Ct. 1327 (2012)

(quoting *Twombly*, 550 U.S. 544, 555 (2007)); (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S.

506, 510–15 (2002)). At the pleading stage, a plausible claim of discrimination must "'allege

facts to satisfy the elements of a cause of action created by that statute.'" *Parker v. Ciena Corp.*,

No. WDQ-14-4036, 2016 WL 153035, at *4 (D. Md. Jan. 12, 2016), *reconsideration denied*, No.

GLR-14-4036, 2016 WL 2851446 (D. Md. May 13, 2016) (quoting *McCleary-Evans v.*

*Maryland Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015), c*ert.*

*denied*, 136 S. Ct. 1162 (2016)). The Amended Complaint, therefore, "must not only allege but

also 'show' that the plaintiff is entitled to relief." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

Plaintiff alleges neither direct evidence of discriminatory intent nor a plausible basis for

discrimination under the *McDonnell Douglas* standard. First, Plaintiff avers no direct evidence

indicating that Wells Fargo's conduct or statements pertaining to loan modification reflected a

discriminatory attitude that bore directly on the loan modification. For a single denial of his loan

application, Plaintiff avers that a Wells Fargo employee reacted negatively upon hearing that

Plaintiff is African-American. ECF No. 25 at 13-14. But this averment regarding the statutorily-

mandated question of Plaintiff's race, 12 C.F.R. §§ 202.13(a)(1); 202.5(a)(2), was included in his

original complaint and was deemed insufficient as a matter of law to claim a violation of the

FHA. *See* ECF No. 23 at 16. Plaintiff has not pleaded any direct evidence reflecting Defendant's

discriminatory purpose in denying Plaintiff's loan applications. *See Smith-Jeter v. City of*

*Columbia*, No. 3:10-1188-JFA, 2012 WL 762079, at *4 (D.S.C. Feb. 24, 2012), *report and recommendation adopted*, No. 3:10-CV-1188-JFA-JRM, 2012 WL 762075 (D.S.C. Mar. 8, 2012), *aff'd*, 474 F. App'x 260 (4th Cir. 2012) ("Plaintiff has not alleged any facts tending to show that the Defendant directed or influenced the handling of her claims in a discriminatory manner."); *Bailey v. Vill. Green Mut. Homes Inc.*, No. RWT 12-CV-3079, 2014 WL 198348, at *3 (D. Md. Jan. 14, 2014) ("[T]here are no facts alleged, beyond a conclusory statement that he was discriminated against because of his religion, to indicate a discriminatory purpose by Defendants or a discriminatory impact.").

Second, Plaintiff failed to allege facts supporting discriminatory animus as a motivating factor in Wells Fargo's decision to deny Plaintiff's loan applications. Although Plaintiff's Amended Complaint includes conclusory allegations that Plaintiff's loan application were denied on the basis of race, it does not assert facts establishing the plausibility of that allegation. To be sure, Plaintiff repeatedly alleges that "Wells Fargo granted credit to similarly situated persons who were non members [sic] of the protected class" and "the denials [were] based on Glenn's race as an African American." *See, e.g.*, ECF No. 25 at 9, 23, 35. But those "naked" allegations —a "formulaic recitation" of the necessary elements—"are no more than conclusions" and therefore do not suffice. *Iqbal*, 556 U.S. at 678–79 (quoting *Twombly*, 550 U.S. at 555, 557) (internal quotation marks omitted); *Parker v. Ciena Corp.*, No. WDQ-14-4036, 2016 WL 153035, at *5 (D. Md. Jan. 12, 2016), *reconsideration denied*, No. GLR-14-4036, 2016 WL 2851446 (D. Md. May 13, 2016) (conclusory employment discrimination allegations that plaintiff was treated differently are not sufficient to survive a motion to dismiss where such allegations are "consistent with discrimination, [but] they do not alone support a reasonable

inference that the decisionmakers were motivated by bias.") (quoting *McCleary-Evans*, 780 F.3d at 585–86) (alterations omitted).

In fact, nowhere in the Amended Complaint does Plaintiff allege that Wells Fargo employees, outside of Mr. Kapoor, had any knowledge of his race. Nor does the Amended Complaint aver facts supporting how Plaintiff was otherwise qualified for the loan modifications at issue but was nonetheless denied because of his race. Moreover, Plaintiff's Amended Complaint leaves open to speculation the cause for the Defendant's decision to reject Plaintiff's loan applications. The cause that he asks the Court to infer (*i.e.,* invidious discrimination) is not plausible in light of the "'obvious alternative explanation'" that the decision-makers simply found Plaintiff unqualified for the credit he sought. *Iqbal*, 556 U.S. at 682 (quoting *Twombly*, 550 U.S. at 567); *see McCleary-Evans*, 780 F.3d at 588, (employment discrimination claims dismissed where no allegations would plausibly suggest discrimination but rather speculation that other candidates were more qualified or better suited for the position). Simply put, no facts alleged in the Amended Complaint lay the foundation for a plausible claim that Plaintiff's status as an African-American bore on Wells Fargo's denial of his loan applications.

Similarly, Plaintiff cannot maintain a discriminatory impact claim under the FHA. To allege disparate impact under the FHA, "[a] plaintiff must identify the neutral practice at issue and cite statistical evidence demonstrating the discriminatory impact caused by the practice." *Letke*, 2015 WL 1438196, at *8 (citing *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994 (1988)). Plaintiff's Amended Complaint fails to identify a neutral policy or program implemented by Defendant that caused a significant disparate effect on a protected class.[12] *See*

---

[12] Plaintiff, in his opposition brief, alleges that Wells Fargo used risk-assessment algorithms during "the loan application process[,] which significantly have an adverse disparate impact on African Americans

*Letke*, 2015 WL 1438196, at *8 (plaintiff failed to allege that she was subject to the alleged discriminatory practice and its discriminatory impact); *Boardley*, 39 F. Supp. 3d at 712 (plaintiffs failed to show the identified pricing policy caused a disparate effect on a protected group). Plaintiff thus fails to state a discrimination claim under the FHA.

### c.   Title VI Discrimination (Count IV)

Title VI provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. To state a claim under Title VI, the Plaintiff must plausibly allege that Defendant received federal financial assistance and engaged in intentional racial discrimination. *Farmer v. Ramsay*, 41 F. Supp. 2d 587, 592 (D. Md. 1999). The Court previously cautioned the Plaintiff that his Amended Complaint "may not rely exclusively on conclusory allegations of unlawful conduct, even where alleged 'upon information and belief.' " ECF No. 23 at 25 (citing *Doe v. Salisbury Univ.*, 123 F. Supp. 3d 748, 768 (D. Md. 2015); *Malibu Media, LLC v. Doe*, No. PWG-13-365, 2014 WL 7188822, at *4 (D. Md. Dec. 16, 2014)).  But other than stating Wells Fargo denied his HAMP loan modification on the grounds that "his final debt to income (DTI) rate was 50.258%," the Plaintiff merely alleges that this stated reason was a "pre-text" because upon unspecified "information and belief"  that the denial was because of "his race and color." ECF No. 25 at 7. Absent a plausible allegation of racial discrimination with respect to Plaintiff's HAMP application, Plaintiff fails to state a claim under Title VI. *See Gaskins v. Baltimore City*

---

and other minorities" and relies on the articles filed as supplementary exhibits. ECF No. 32 at 41. A review of the Amended Complaint, however, reveals that the cited paragraphs make no reference to any such policy or procedure implemented by Wells Fargo. Plaintiff cannot rely on allegations in his pleadings to insulate the complaint from dismissal. *See Mylan Labs., Inc. v. Akzo, N.V.*, 770 F. Supp. 1053, 1068 (D. Md. 1991).

*Pub. Sch.*, No. JKB-15-2961, 2016 WL 192535, at *8 (D. Md. Jan. 15, 2016), *aff'd sub nom.*

*Gaskins v. Abiodun*, 649 F. App'x 307 (4th Cir. 2016).

### d.   Title VI Retaliation (Count V)

Title VI also includes an implied right of action for an individual alleging retaliation

against a person because that person complained of race discrimination. *Peters v. Jenney*, 327

F.3d 307, 316–21 (4th Cir. 2003). To state a Title VI retaliation claim, Plaintiff must allege that:

(1) he engaged in protected conduct; (2) he suffered an adverse action; and (3) a causal link

exists between the protected conduct and the adverse action. *Id.* at 320; *Howerton v. Bd. of Educ.*

*of Prince George's Cty.*, No. TDC-14-0242, 2015 WL 4994536, at *17 (D. Md. Aug. 19,

2015).[13] Plaintiff must aver the "protected activity was a but-for cause of the alleged adverse

action." *Murphy-Taylor v. Hofmann*, 968 F. Supp. 2d 693, 721 (D. Md. 2013) (quoting *Univ. of*

*Tex. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2534 (2013)).

Plaintiff claims that Wells Fargo denied his later credit applications because he submitted

race discrimination complaints to various government offices and agencies. Plaintiff has

amended his original complaint to now provide a chronological listing of his complaints with

Senator Benjamin Cardin's Office, the Consumer Financial Protection Bureau, the Office of the

Comptroller of the Currency, and the President of the United States. *See* ECF No. 25 at 15–24.

But Plaintiff has not sufficiently alleged the requirements necessary for approval or his actual

qualifications when he submitted each purported credit application. As a result, Plaintiff has not

established that his race discrimination complaints were the "but-for" cause of Wells Fargo's

adverse actions in this case. Accordingly, Plaintiff fails plausibly to connect his alleged reports

and complaints to the denial of his subsequent applications.

---

[13] The Court uses the same standard applicable to Title VII retaliation claims. *Howerton v. Bd. of Educ.of Prince George's Cnty.*, Case No. TDC-14-0242, 2015 WL 4994536, at *17 (D. Md. Aug. 19, 2015).

### III.CONCLUSION

For the reasons stated above, the Court grants Defendant's Motion to Dismiss the claims related to Plaintiff's business account because they are arbitrable (ECF No. 31). As to Plaintiff's non-arbitrable claims, the Court grants Defendant's Motion to Dismiss for failure to state a claim (ECF No. 31). The Court also denies as moot Defendant's Motion to Strike, grants Plaintiff's motion for an extension of time to file supplemental exhibits (ECF No. 33), and denies Plaintiff's motion for leave to file a surreply (ECF No. 38). A separate order will follow.


 1/26/2017                                                              /S/
Date                                              Paula Xinis
                                                  United States District Judge